## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIMONE BUNSEN,<br><br>              Plaintiff,<br><br>      v.<br><br>AMAG PHARMACEUTICALS, INC., GINO SANTINI, SCOTT MYERS, JOHN A. FALLON, PAUL FONTEYNE, DAVID JOHNSON, KATHRINE O'BRIEN, ANNE M. PHILLIPS, DAVEY S. SCOON, and JAMES SULAT,<br><br>              Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.      This action concerns a proposed transaction announced on October 1, 2020 pursuant to which AMAG Pharmaceuticals, Inc. ("AMAG or the "Company") will be acquired by Covis Group S.à.r.l. ("Covis Group").

2.      On October 1, 2020, AMAG's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which and Covis Group and Covis Mergerco Inc. commenced a tender offer to purchase all of AMAG's outstanding common stock for $ 13.75 per share in cash  (the "Tender Offer").

3.      On October 15, 2020, in order to convince AMAG's stockholders to tender

their shares, defendants authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC").

4.      The Solicitation Statement omits material information with respect to the Tender Offer, which renders the Solicitation Statement false and misleading.  Accordingly, Plaintiff alleges herein that defendants violated Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

5.      In addition, the Tender Offer is scheduled to expire at midnight, Eastern Time, on November 12, 2020 (the "Expiration Time").  It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the Expiration Time so they can properly determine whether to tender their shares.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(d), 14(e) and 20(a) of the 1934 Act and Rule 14d-9.

7.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the

conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of AMAG common stock.

10.      Defendant AMAG is a Delaware corporation and a party to the Merger Agreement.  AMAG common stock is traded on the NASDAQ under the ticker symbol "AMAG."

11.      Defendant Gino Santini is Chairman of the Board of the Company.

12.      Defendant Scott Myers is Chief Executive Officer, President, and a director of the Company.

13.      Defendant John A. Fallon is a director of the Company.

14.      Defendant Paul Fonteyne is a director of the Company.

15.      Defendant David Johnson is a director of the Company.

16.      Defendant Kathrine O'Brien is a director of the Company.

17.      Defendant Anne M. Phillips is a director of the Company.

18.      Davey Scoon is a director of the Company.

19.      Defendant James Sulat is a director of the Company.

## FACTS

20.      AMAG is a commercial-stage biopharmaceutical company focused on bringing innovative products to patients with unmet medical needs. The Company does

this by leveraging its development and commercial expertise to invest in and grow its pharmaceutical products across a range of therapeutic areas.  The Company has license agreements with Endoceutics, Inc., Palatin Technologies, Inc., Velo Bio, LLC, Prasco, LLC, Perosphere Pharmaceuticals Inc., and Antares Pharma, Inc. AMAG was founded in 1981 and is headquartered in Waltham, Massachusetts.

21.     Covis Group is headquartered in Luxembourg with operations in Zug, Switzerland and is a global specialty pharmaceutical company that markets therapeutic solutions for patients with life threatening conditions and chronic illnesses.

22.     On October 1, 2020, AMAG's Boards caused the Company to enter into the Merger Agreement.

23.     According to the press release announcing the Tender Offer:

**Luxembourg, Zug, Switzerland and Waltham, Mass. (October 1, 2020)–** Covis Group S.à r.l. ("Covis") and AMAG Pharmaceuticals, Inc. (NASDAQ: AMAG) today announced that they have entered into a definitive agreement under which Covis will acquire AMAG for $13.75 per share in cash, or approximately $498 million on a fully diluted basis and approximately $647 million on an enterprise basis, including debt obligations expected to be assumed or repaid net of cash. The offer represents a premium of approximately 46% to the closing price of AMAG's common stock on September 30, the last full trading day prior to the announcement.

Commenting on the transaction, Covis CEO Michael Porter said, "AMAG's category leading treatments are strong strategic complements to our existing therapeutic portfolio. Through this combination, we believe we will be able to unlock value for all of our stakeholders, employees and patients through the effective and efficient management of these products, coupled with our two companies' longstanding commitment to expanding patient access to therapy and putting patient interests first. At Covis, we never lose sight that our patients are our paramount concern. We look forward to engaging with the talented team at AMAG as we work together to plan the integration of our two organizations."

AMAG CEO Scott Myers added, "In the beginning of 2020, AMAG announced that the company had undertaken a strategic review of our

product portfolio and strategy, the guiding principles of which included driving near- and long-term profitability and enhancing shareholder value. This strategic review resulted in the company pursuing and accomplishing the divestiture of its women's health assets, and other efforts to streamline and strengthen the core business to position AMAG for the future. Following this initial transformation, our Board of Directors and management team, together with independent legal and financial advisors, thoroughly evaluated the transaction with Covis as well as other strategic options and concluded that it represents the most compelling opportunity for shareholders, providing them certain and immediate cash value. We believe Covis is the right partner for AMAG, especially in light of Covis' shared commitment to ensuring that our therapies will reach patients in need. We are confident the work we've done will continue to thrive under Covis' leadership."

The completion of the tender offer is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of AMAG's common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the tender offer, an indirect, wholly owned subsidiary of Covis will merge with AMAG (the "merger") and the outstanding AMAG shares not tendered in the tender offer will be converted into the right to receive the same $13.75 per share in cash paid in the tender offer. The tender offer is expected to commence in October 2020. Covis plans to finance the transaction with cash on hand, and a combination of committed debt and equity financing. There is no financing condition to the obligations of Covis to consummate the transaction.

24.     The Offer Price is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Tender Offer.

25.     It is therefore imperative that the Company's common stockholders receive the material information that defendants have omitted from the Solicitation Statement so that they can meaningfully assess whether to tender their shares.

26.     Section 6.2 of the Merger Agreement provides for a no solicitation clause that prevents AMAG from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

5

(a)   The Company shall not, and shall cause its Subsidiaries and its and their respective directors, officers and employees not to, and shall not authorize or instruct its Company Representatives to, and shall use its reasonable best efforts to cause its Company Representatives not to:

(i)   solicit, initiate, or knowingly facilitate or encourage the submission or announcement of any Acquisition Proposal or Acquisition Inquiry (including by approving any transaction, or approving any Person becoming an "interested stockholder," for purposes of Section 203 of the DGCL);

(ii)   furnish any non-public information regarding the Company to any Person, or afford to any Person access to the business, properties, assets, books, records or other non-public information, or to any personnel, of the Company or any of its Subsidiaries, for the purpose of facilitating or encouraging, or in response to, an Acquisition Proposal or Acquisition Inquiry;

(iii)   engage or participate in or continue any discussions or negotiations with any Person with respect to any Acquisition Proposal or Acquisition Inquiry (it being understood that the foregoing shall not prohibit the Company or the Company Representatives from making such Person aware of the restrictions of this Section 6.2 in response to the receipt of an Acquisition Proposal or Acquisition Inquiry or clarifying the terms of any such Acquisition Proposal or Acquisition Inquiry);

(iv)   terminate, waive, amend or modify any provision of, or grant permission under, any confidentiality agreement to which the Company or any of its Subsidiaries is a party and that contains a "standstill" provision;

(v)   enter into any Alternative Acquisition Agreement or any Contract requiring the Company to abandon, terminate or fail to consummate the Transactions; or

(vi)   resolve or agree to take any of the foregoing actions.

27.   In addition, Section 8.3 of the Merger Agreement requires AMAG to pay a $16,250,000 "termination fee" to Covis Group in the event this agreement is terminated by AMAG and improperly constrains the Company from obtaining a superior offer.

28.   Defendants filed the Solicitation Statement with the SEC in connection with the Tender Offer.  As alleged herein, the Solicitation Statement omits material information, which renders the Solicitation Statement false and misleading.

29.   First, the Solicitation Statement omits material information regarding

AMAG's financial projections.

30.     With respect to AMAG's financial projections, the Solicitation Statement fails to disclose (i) all line items used to calculate EBIT; and (ii) projected net operating loss carryforwards.

31.     The disclosure of projected financial information is material information necessary for AMAG stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

32.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

33.     With respect to Goldman's *Illustrative Sum-of-the-Parts Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the risk-adjusted estimates of the unlevered free cash flows to be generated from each of Feraheme, Makena, and Ciraparantag for the period from June 30, 2020 through 2040 and all underlying line items; (ii) the estimates of revenues expected in connection with certain Intrarosa Milestones payments as used in the analysis; (iii) the estimates of research and development costs of the Company as used in the analysis; (iv) the estimates of corporate costs as used in the analysis; (v) the projected net operating loss carryforwards forecasts; (vi) the individual inputs and assumptions underlying the range of discount rates from 10.5% to 12.5%; (vii) the number of fully diluted outstanding shares of the Company; and (viii) the Company's net debt.  This information must be disclosed to make the Solicitation Statement not

materially misleading to AMAG stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

34.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Solicitation Statement fails to disclose: (i) Goldman's basis for applying a range of illustrative on-year forward EV/Revenue multiples of 2.0x to 3.0x; (ii) the forecasted net debt used in the analysis; (iii) the number of fully diluted outstanding shares of the Company; and (iv) the individual inputs and assumptions underlying the discount rate of 11.6%.  This information must be disclosed to make the Solicitation Statement not materially misleading to AMAG stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

35.     With respect to *Goldman's Premia Analysis*, the Solicitation Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.  This information must be disclosed to make the Solicitation Statement not materially misleading to AMAG stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

36.     With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose: the inputs and assumptions underlying the applied range of enterprise value to revenue multiples of 2.0x to 3.0x to the Company's next 12-months revenue as of June 30, 2020.  This information must be disclosed to make the Solicitation Statement not materially misleading to AMAG stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

37.     When a banker's endorsement of the fairness of a transaction is touted to

shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38.     The omission of the above-referenced material information renders the Solicitation Statement false and misleading.

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(e) OF THE EXCHANGE ACT)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

42.     Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

43.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

44.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Tender Offer as set forth above.

45.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

46.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Tender Offer. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

47.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

48.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

49.     Because of the false and misleading statements in the Solicitation Statement, plaintiff is threatened with irreparable harm.

50.     Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(d) OF THE EXCHANGE ACT AND RULE 14d-9 PROMULGATED THEREUNDER)

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may

prescribe as necessary or appropriate in the public interest or for the protection of investors.

53.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

54.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

55.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

56.     The omissions in the Solicitation Statement are material to plaintiff, and who will be deprived of her right to make a fully informed decision with respect to the Tender Offer if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Tender Offer.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Tender Offer. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

61.     In addition, as the Solicitation sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation purports to describe the various issues and

information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and 14(d) and  Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer;

B.     In the event defendants consummate the Tender Offer, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e) and/or 20(d) of the 1934 Act, as well as Rule 14d-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 29, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore (pro hac vice motion forthcoming)
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*